## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

)
IN RE CHEMED CORPORATION,     )    Civil Action No. 13-1854-LPS-CJB
SHAREHOLDER DERIVATIVE     )    Consolidated Action
LITIGATION     )

## REPORT AND RECOMMENDATION

Pending before the Court in this consolidated shareholder derivative action is proposed

plaintiff Michael Kvint's "Motion for Leave to Substitute Plaintiff and File Amended

Complaint[,]"[1] filed pursuant to Federal Rules of Civil Procedure 15 and 24 ("Motion"). The

Motion is opposed by Defendants Kevin J. McNamara, Timothy S. O'Toole, David P. Williams,

Joel F. Gemunder, Patrick P. Grace, Thomas C. Hutton, Walter L. Krebs, Andrea R. Lindell,

Thomas P. Rice, Donald E. Saunders, Arthur V. Tucker, Jr., George J. Walsh III, Frank E. Wood,

Ernest J. Mrozek, (collectively, the "Individual Defendants"), and Nominal Defendant Chemed

Corporation ("Chemed" or the "Company," and together with the Individual Defendants,

"Defendants"). (D.I. 58) For the reasons that follow, the Court recommends that Mr. Kvint's

Motion be GRANTED-IN-PART and DENIED-IN-PART, in the manner described below.

### I.    BACKGROUND

#### A.    Factual Background

##### 1.    The Parties

Mr. Kvint is a current owner of Chemed common stock. (D.I. 58, ex. A at ¶ 15; *see also*

---

[1]    Although Mr. Kvint's Motion is styled as a "Motion for Leave to *Substitute* Plaintiff and File Amended Complaint[,]" (D.I. 58 (emphasis added)), at oral argument on the Motion, counsel for Mr. Kvint represented (and Defendants agreed) that Federal Rule of Civil Procedure 24, which relates to *intervention*, is the proper rule under which to analyze the Motion. (*See* D.I. 73 at 16, 45, 49) Accordingly, the Court will address the "substitution" portion of the Motion as a motion to intervene, and will analyze it under the provisions of Rule 24.

D.I. 68, ex. 1 at ¶ 2 & ex. A) According to his proposed Amended Verified Shareholder Derivative Complaint ("PAC") and other documents of record, he has continuously owned such shares since August 2, 2007, and held 50 shares as of January 23, 2017. (D.I. 58, ex. A at ¶ 15; *see also* D.I. 68, ex. 1 at ¶ 2 & ex. A)

KBC Asset Management, NV ("KBC"), which filed the original Verified Shareholder Derivative Complaint ("Complaint") in this action on November 6, 2013, (D.I. 1), is an asset management company, (*id.* at ¶ 13). At the time of the filing of that Complaint, KBC was a shareholder of Chemed. (*Id.*) KBC owned Chemed stock continuously from at least February 9, 2009 until December 30, 2014, when it sold the last of its Chemed shares. (*Id.*; D.I. 69, ex. B)

Nominal Defendant Chemed is a publicly traded company that is incorporated in Delaware and maintains its principal place of business in Cincinnati, Ohio. (D.I. 1 at ¶ 14) Chemed, through its affiliated subsidiaries (collectively referred to herein as "Vitas"), provides end-of-life hospice care services under the Vitas Innovative Hospice® brand; Vitas serves its patients through 52 hospice programs in 18 states and the District of Columbia. (*Id.* at ¶¶ 1, 14) The remaining Defendants are current and former members of Chemed's Board of Directors and/or executives at Chemed (the "Individual Defendants"). (*Id.* at ¶¶ 15-28; D.I. 58, ex. A at ¶¶ 17-30)

## B. Procedural Background

### 1. The KBC Complaint and Dismissal

On November 6, 2013, without first making a demand on the Board, KBC filed this shareholder derivative action in this Court. (D.I. 1) In its Complaint, KBC alleged that the Individual Defendants breached the fiduciary duties of good faith, loyalty, and due care in

2

managing Chemed's affairs. (*Id.* at ¶¶ 169-71) In lieu of an Answer, on February 12, 2014, Defendants filed a motion to dismiss for failure to state a claim. (D.I. 12)

In the meantime, former plaintiff Mildred A. North had filed a similar shareholder derivative action against nearly all of the Defendants on November 14, 2013 in the United States District Court for the Southern District of Ohio ("Southern District of Ohio"). (Civil Action No. 14-1209-LPS-CJB (the "*North* Action"), D.I. 1) North then moved the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") to centralize the litigation in the Southern District of Ohio; the MDL Panel later denied that motion. (*North* Action, D.I. 21) Upon Defendants' request, the Southern District of Ohio thereafter transferred the *North* Action to this Court. (*North* Action, D.I. 28)

In light of the transfer of the *North* Action, on September 29, 2014, Chief Judge Leonard P. Stark denied without prejudice KBC's then-pending motion to dismiss. (D.I. 29) Chief Judge Stark then ordered that this action (the "*KBC* Action") and the *North* Action be referred to the Court for all purposes, up to and including resolution of case-dispositive motions. (*Id.*)

On October 15, 2014, KBC filed a motion (the "consolidation motion") seeking consolidation of the two cases, that the Court appoint it as Lead Plaintiff, and appoint its outside counsel (Motley Rice, LLC, or "Motley Rice") as Lead Counsel and its Delaware counsel (Rosenthal, Monhait & Goddess, P.A., or "Rosenthal") as Liaison Counsel. (D.I. 30) After oral argument on the opposed consolidation motion, on February 2, 2015, the Court issued a Memorandum Opinion and related Order, in which, *inter alia*, it: (1) ordered the two cases consolidated for all purposes; (2) appointed KBC as Lead Plaintiff, (3) appointed Motley Rice as Lead Counsel; (4) appointed Rosenthal as Liaison Counsel; and (5) allowed Lead Counsel 30

3

days to file a consolidated complaint or to designate one of the pending complaints as the operative complaint in the case. (D.I. 40, 41) Subsequently, the parties submitted a joint stipulation, asking the Court to, *inter alia*: (1) designate the KBC Complaint as the sole, operative complaint; (2) deem Defendants' motion to dismiss to have been re-filed and/or re-submitted; (3) allow the submission of supplemental briefing on the motion to dismiss; and (4) take the motion to dismiss under advisement and decide the motion to dismiss upon the previously-filed briefs and supporting documents, as well as the new supplemental briefing. (D.I. 42)

After Plaintiffs and Defendants submitted supplemental briefing on the motion, (D.I. 43-44), on December 23, 2015, the Court issued a Report and Recommendation, (D.I. 46). Therein, the Court recommended: (1) dismissal with prejudice as to Plaintiffs' allegations of breaches of the duty of care; (2) dismissal without prejudice of Plaintiffs' duty of loyalty claims; (3) that Plaintiffs be permitted 14 days from the date of the District Court's affirmance to file an amended complaint addressing deficiencies cited in the Report and Recommendation with regard to the duty of loyalty claim; and (4) dismissal with prejudice of the duty of loyalty claim upon failure to amend. (*Id.* at 47-48)

On May 12, 2016, via a Memorandum Order, the District Court adopted that Report and Recommendation (the "May 12, 2016 Order"). (D.I. 53) In doing so, it dismissed KBC's Complaint, and further ordered that "(1) Plaintiff shall, if it chooses, file within thirty (30) days of the date of this Order an amended complaint that addresses the deficiencies of its duty of loyalty claim . . . and (2) failure to do so shall result in dismissal with prejudice." (*Id.* at 3)

## 2.     The Instant Motion and Supplemental Submissions

4

On June 13, 2016—the deadline for KBC to file an amended complaint per the District Court's May 12, 2016 Order—counsel for Mr. Kvint filed a letter with the Court (the "June 13, 2016 letter"). (D.I. 55-1) In that letter, Mr. Kvint's counsel informed the Court that they had "just been advised that KBC will not in fact be filing an amended complaint." (*Id.* at 1) Mr. Kvint's counsel stated that Mr. Kvint had "expressed an interest in continuing to prosecute th[e] matter" and requested an extension until June 27, 2016 for Mr. Kvint to file: (1) a "motion to substitute himself as plaintiff in place of KBC[,]" and (2) a motion for leave to file an amended complaint. (*Id.*) On June 21, 2016, the District Court ordered that Mr. Kvint would have until June 30, 2016 to file the proposed motions, and referred such motions (if filed) to the Court for resolution. (D.I. 57)

On June 30, 2016, Mr. Kvint filed the instant Motion, (D.I. 58), along with the PAC, (*id.*, ex. A). The PAC not only reasserted KBC's claim for breach of fiduciary duty against the Individual Defendants, (*id.* at ¶¶ 234-36) ("Count III"), but also added two new claims alleging violations of (1) Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 ("Count I"); and (2) Section 29(b) of the Exchange Act (15 U.S.C. § 78cc(b)) ("Count II"), (*id.* at ¶¶ 226-33). The Motion was initially fully briefed as of July 27, 2016. (*See, e.g.*, D.I. 61)

Neither in Mr. Kvint's June 13, 2016 letter to the Court, nor his Motion/opening brief, nor in his attached PAC, did Mr. Kvint explain *why* it was that KBC had chosen not to file an amended complaint. In the opening brief accompanying his Motion, Mr. Kvint said only that "Court-appointed lead plaintiff KBC is not in a position to pursue this action[,]" (D.I. 58 at 3), without explaining why KBC "was not in a position" to do so. As a result, in their answering

5

brief, Defendants understandably assumed that KBC was not further pursuing the action because it had simply determined that there was no legal justification for filing an amended complaint. Defendants thus argued that "it appears that Mr. Kvint seeks to intervene simply because he disagrees with KBC's decision not to file an amended complaint." (D.I. 60 at 7)

Then, in his reply brief, Mr. Kvint for the first time did mention what had prompted his proposed entry into the case. There, and without citation to any evidence of record, Mr. Kvint included a one-sentence explanation, stating that "KBC inadvertently sold its Chemed stock and, as a result, lost standing to maintain this action." (D.I. 61 at 1) No further details were provided by Mr. Kvint, or by KBC or its counsel, at this time (such as, for example, record evidence detailing how and when KBC had actually sold the last of the Chemed stock at issue).

Upon the request of Chemed, (D.I. 63), the Court held oral argument on the Motion on January 24, 2017, (D.I. 73 (hereinafter, "Tr.")). Following oral argument, the Court issued an Order requesting supplemental briefing. (D.I. 67) That Order, *inter alia*, allowed Mr. Kvint and KBC to submit evidence regarding KBC's asserted sale of Chemed stock, and stated that it would "deem such a submission as a request for the Court to consider such materials, without deciding at [that] time whether or not to grant such a request." (*Id.* at 2)

Thereafter, as part of his supplemental briefing, Mr. Kvint submitted a series of declarations evidencing that: (1) KBC had sold its last-held Chemed shares on December 30, 2014; (2) as part of the process of preparing an amended complaint, on June 13, 2016, Motley Rice learned for the first time that "it appeared that KBC no longer held shares of Chemed stock"; (3) on the same date, June 13, 2016, outside counsel for Mr. Kvint (Hynes Keller &

6

Hernandez, LLC and Scott + Scott, Attorneys at Law, LLP),[2] first learned of KBC's loss of standing from Motley Rice; and (4) on or about July 7, 2016, Motley Rice received trading data from KBC confirming that, in fact, KBC had sold the last of its shares of Chemed stock on December 30, 2014. (*See* D.I. 68, exs. 2-4) Supplemental briefing was complete as of February 8, 2017. (*See, e.g.*, D.I. 71)

## II. DISCUSSION

### A. Motion to Intervene

#### 1. Legal Standard

Rule 24(a)(2) provides that upon timely application, an applicant shall be permitted to intervene in an action as of right when the applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The United States Court of Appeals for the Third Circuit has interpreted Rule 24(a)(2) to require proof of four elements from the applicant seeking intervention: (1) a timely application for leave to intervene; (2) a sufficient interest in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action, and (4) inadequate representation of the prospective intervenor's interest by existing parties to the litigation. *Kleissler v. U.S. Forest Serv.*, 157 F.3d

---

[2]      Rosenthal, which has been serving as Liaison Counsel for KBC, has also served as Delaware counsel for Mr. Kvint since Mr. Kvint filed his Motion. (*See, e.g.*, D.I. 68) Motley Rice was also listed as Mr. Kvint's counsel on the briefing regarding the Motion, (D.I. 58; D.I. 61), though when the Court herein refers to Motley Rice as "Lead Counsel," it is making reference to the firm's representation of KBC unless otherwise noted, and when it herein refers to "Mr. Kvint's counsel," it is referring to Hynes Keller & Hernandez, LLC and Scott + Scott, Attorneys at Law, LLP, unless otherwise noted.

964, 969 (3d Cir. 1998); *see also Endoheart AG v. Edwards Lifesciences Corp.*, Civil Action No. 14-1473-LPS-CJB, 2015 WL 6956603, at *1 (D. Del. Nov. 6, 2015). The burden is on the movant seeking to intervene to show that these elements have been satisfied, and failure to prove any one of the criteria is sufficient grounds to deny the motion. *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 974 (3d Cir. 1982); *Olympic Sports Data Servs., Ltd. v. Maselli*, Civil Action No. 07-117, 2008 WL 5377626, at *2 (E.D. Pa. Dec. 22, 2008) (citing 6 James W. Moore et al., *Moore's Federal Practice-Civil* § 24.03 (3d ed. 2008)).

The Third Circuit has not directly addressed the standard for consideration of potentially disputed facts set forth in a motion to intervene. *See Endoheart AG*, 2015 WL 6956603, at *2. However, other circuits have held that the court is to accept the movant's motions and pleadings as true, to the extent that they are non-conclusory and well-pleaded. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995); *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981); *cf. United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) ("A motion to dismiss a complaint in intervention is reviewed under the same standard applicable to consideration of a motion to dismiss the original plaintiffs' complaint.").[3]

## 2.    Supplementing the Evidentiary Record

While the Court will later directly address whether Mr. Kvint has satisfied the legal elements for a motion to intervene, (*see* Section II.A.3, *infra*), there is a preliminary matter to address first. As noted above, in order to prevail on his motion to intervene, Mr. Kvint would

---

[3]    Indeed, district courts within the Third Circuit have routinely held that in resolving a motion to intervene, a court must accept the non-conclusory allegations made in support thereof. *See, Endoheart AG*, 2015 WL 6956603, at *2 n.2 (collecting cases).

have to demonstrate, *inter alia*, "inadequate representation of [his] interest by existing parties to the litigation." *Kleissler*, 157 F.3d at 969. It is clear that Mr. Kvint would be wholly unable to demonstrate that the existing party (here, KBC) does not adequately represent his interest, unless the Court could take into account the supplemental materials (those relating to KBC's sale of Chemed stock, and its loss of standing) that Mr. Kvint produced only recently. Because Mr. Kvint did not produce these materials in conjunction with the filing of the PAC or his briefing on the Motion, unless the Court actually permits him to supplement the record on that point, his motion to intervene will necessarily fail. Thus, the Court will first determine whether it should consider Mr. Kvint's supplementary materials.[4]

The Court has discretion to permit Mr. Kvint to supplement the evidentiary record. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331-32 (1971); *Peninsula Advisors, LLC v. Fairstar Res. Ltd*, C.A. No. 10-489-LPS, 2014 WL 491671, at *3 & n.3 (D. Del. Feb. 5, 2014). It should consider a motion to reopen the record for the submission of supplemental evidence "in light of all the surrounding circumstances[,] and either grant or deny it in the interest of fairness and substantial justice." *Joy Techs., Inc. v. Flakt, Inc.*, 901 F. Supp. 180, 181 (D. Del. 1995) (citing 6A James Wm. Moore et al., *Moore's Federal Practice*, § 59.04[13] (2d ed. 1995)). Specifically, the Court should consider the following three factors: "1) the timing of the motion and the moving party's explanation for failing to introduce the evidence earlier, 2) whether the evidence sought to be introduced is especially important or probative and

---

[4] Along with the supplementary materials that he filed relating to KBC's sale of Chemed stock, Mr. Kvint also submitted his own declaration (and an exhibit thereto), which, *inter alia*, confirms that he is a Chemed shareholder. (D.I. 68, ex. 1 & ex. A) Mr. Kvint also pleaded that fact in the PAC, which is attached to the Motion. (D.I. 58, ex. A at ¶ 15)

3) whether reopening will cause undue prejudice to the nonmoving party." *Id.* (citations omitted).[5]

### a.    Timing and Explanation for Delay

The timing of Mr. Kvint's request to reopen the record surely cuts against Mr. Kvint's position. While Mr. Kvint filed his supplemental materials in accordance with the Court's January 25, 2017 Order, (D.I. 67; D.I. 68), the proper time to first have submitted that evidence was at the time of the Motion's filing, approximately seven months earlier, (D.I. 58). As noted above, Mr. Kvint did not even mention in the Motion (or in the accompanying PAC) that KBC had lost standing—and that this was the factor that was prompting him to file the Motion in the first place. Even when Mr. Kvint did finally mention the loss of standing issue in his reply brief, (D.I. 61 at 1), he did so without providing any evidentiary support (such as via a sworn declaration) for the assertion. He failed to do so even though he now emphasizes "the relevance of [such] materials to the [proposed] amended complaint[.]" (D.I. 70 at 1).

To recap the relevant facts, it is now clear from the record that KBC lost standing as of December 30, 2014, when it sold the last of its Chemed shares. (Tr. at 7; D.I. 68, exs. 2-4; D.I. 69, ex. B) This would mean that the Lead Plaintiff in this case did not have standing for a period of nearly 18 months while it was actively participating in litigation. Perhaps most notably, KBC

---

[5]       While the parties cited *Joy Technologies, Inc. v. Flakt, Inc.*, 901 F. Supp. 180 (D. Del. 1995) as a case that utilized these factors in assessing a motion to reopen the record, (*see* D.I. 69-71), that case involved a motion to reopen the record *after a trial. See Joy Technologies*, 901 F. Supp. at 181. However, it appears that the Third Circuit and other courts within the Circuit have considered the same factors in addressing motions to supplement the record at other stages of cases (albeit without explicitly listing the factors). *See, e.g., Edwards v. Pa. Tpk. Comm'n*, 80 F. App'x 261, 265 (3d Cir. 2003); *United States ex rel. Feldstein v. Organon, Inc.*, Civil Action No. 07-CV-2690 (DMC), 2009 WL 961267, at *2-3 (D.N.J. Apr. 7, 2009). And so, the Court will consider these factors here.

lacked standing in January 2015, when it and its counsel participated in oral argument on the consolidation motion. There, they were vigorously arguing that they would be the most appropriate Lead Plaintiff/Lead Counsel/Liaison Counsel, in part due to: (1) KBC's "large ownership of Chemed stock"; (2) KBC's ability to "diligently" litigate the matter on behalf of Chemed and its shareholders; and (3) Motley Rice and Rosenthal's experience in prosecuting shareholder derivative actions like this one. (D.I. 31 at 11-12, 16-19) Despite these assurances, it was not until nearly 18 months later, on June 13, 2016 (at the time when KBC was considering filing an amended complaint), that KBC's Company Lawyer first learned from its fund managers that KBC no longer held Chemed shares. (D.I. 68, ex. 4 at ¶ 4) KBC then communicated this immediately to Motley Rice, (*id.*; *see also id.*, ex. 3 at ¶ 5), who communicated it immediately to Rosenthal and to Mr. Kvint's counsel, (*id.*, ex. 3 at ¶ 6; *id.*, ex. 2 at ¶ 4; ; *id.*, ex. 5 at ¶ 6). On July 7, 2016, KBC confirmed that it had sold the last of its Chemed stock on December 30, 2014, (*id.*, ex. 4 at ¶ 5), and communicated that to Motley Rice, (*id.*, ex. 3 at ¶ 9).

Of course, it is concerning that KBC and its counsel were unaware for so long that the Lead Plaintiff in this case did not have standing to pursue the action. But put that aside.

The more important question regarding the instant Motion is why it took so long for Mr. Kvint and his counsel (as well as KBC, and its counsel)—once they learned about facts relevant to KBC's loss of standing—to actually disclose those facts to the Court. At a minimum, at least by the time Mr. Kvint filed his Motion on June 30, 2016, (D.I. 58), KBC, Motley Rice, Rosenthal and Mr. Kvint's counsel all knew that KBC lacked standing. But at that time, no one said anything about this to the Court or to Defendants. And by the time Mr. Kvint filed his reply brief on July 27, 2016, (D.I. 61), KBC and Motley Rice knew all of the "details" of that stock sale,

including "when the asset managers sold the stock" and what was the "trading data from KBC" that confirmed the sale. (D.I. 68, ex. 3 at ¶ 9; *id.*, ex. 4 at ¶¶ 4-5) But again, no one shared those details with the Court or with Defendants.[6]

It is not as if these facts were tangential to the Motion. As previously noted, the fact of KBC's sale of Chemed stock is *the very reason* why Mr. Kvint was seeking to intervene in the first place. It necessitated the entry of a new plaintiff were the case to have any hope of staying alive. And disclosing evidence of the sale would help make a record as to why, pursuant to the dictates of Rule 24, Mr. Kvint's interest could not be adequately represented by existing Lead Plaintiff KBC.

At oral argument, the Court, troubled by this lack of timely disclosure as to key facts, questioned counsel further about the issue. (Tr. at 23-24, 75-77) Mr. Kvint's counsel stated that while it had known of the KBC stock sale as of the filing of the June 13, 2016 letter and as of the date of the Motion, it said nothing because whether to make such a disclosure was "internally a point of contention[.]" (*Id.* at 75-76; *see also id.* at 26 (Mr. Kvint's counsel stating that "without divulging too much, there were many discussions on June 13th about those concerns and how they affected different people."); *id.* at 78 (Mr. Kvint's counsel noting that "[g]iven the way it played out . . . I wish we had said in the [June 13, 2016] letter that KBC had sold.")) Lead

_____

[6]     Defendants' counsel, having seen the reference to a stock sale in Mr. Kvint's reply brief, thereafter tried to obtain further details about the sale from Lead Counsel. On September 7, 2016, Lead Counsel informed Defendants' counsel that KBC had sold the last of its Chemed stock in December 2014, but refused to provide Defendants' counsel with any confirmatory account records or paperwork as to the sale. Instead, as to that budding dispute, Lead Counsel wrote that it saw "no reason to burden the Court with [what Lead Counsel termed] a moot issue." (D.I. 69, ex. B) The Court did not end up learning any of the details about this sale of stock until oral argument on the Motion on January 24, 2017, and only then because *the Court asked* KBC's and Mr. Kvint's counsel about the issue. (Tr. at 7)

Counsel, for their part, also stated that whether to inform the Court (either by June 13, 2016 or by the date of the filing of the Motion) about the KBC stock sale was "a subject of disagreement among the group" and that Lead Counsel "didn't want to provide incorrect information as we continued to assess the situation." (*Id.* at 87; *see also* D.I. 68 at 5)

As to the "incorrect information" point, of course, the Court is sympathetic to the idea that counsel, dealing with a late-arising issue, would want to be sure it had key facts right before sharing them with the Court or opposing counsel. And that concern might well explain why on June 13, 2016, when Lead Counsel, Liaison Counsel, Mr. Kvint and his counsel all first learned of the stock sale issue, the issue went unmentioned in Mr. Kvint's June 13, 2016 letter. But by the date of the filing of the Motion a few weeks later, KBC had confirmed (and Mr. Kvint and his counsel knew), that KBC had in fact sold the last of its Chemed shares. (D.I. 68, ex. 2 at ¶ 4; *id.*, ex. 4 at ¶ 4; *see also* D.I. 68 at 5 (Mr. Kvint noting that as of June 30, 2016, "Lead Counsel was still attempting to confirm and ascertain *the timing of* KBC's sale of Chemed stock") (emphasis added)) Nothing prevented Mr. Kvint from submitting a declaration or affidavit on this date that set out his good-faith basis for believing that KBC no longer had standing. (*See* Tr. at 51, 78-79; D.I. 69 at 5 n.5; D.I. 71 at 5) And it is absolutely clear that as of the date for completion of briefing, all of the details regarding the stock sale were known to KBC, its counsel, Mr. Kvint and his counsel. And yet, Mr. Kvint and KBC filed no supporting evidence then, nor in all of the many months prior to oral argument.

Moreover, there need not have been any "contention" or "disagreement" amongst Mr. Kvint, KBC and their counsel as to whether to have earlier supplemented the record. Mr. Kvint and his counsel should have done so—if for no other reason than because Mr. Kvint *had* to do so

in order to have a chance of prevailing on his Motion. (D.I. 71 at 5 (Defendants noting that "[i]f Mr. Kvint and his counsel believed they had sufficient grounds to bring an allegedly non-frivolous motion to intervene, then it stands to reason that they possessed sufficient information to disclose the basis of that motion to the Court and Defendants."))[7] And in the Court's view, KBC and Motley Rice should have alerted the Court of the stock sale as well, in order to fulfill their responsibilities as Lead Plaintiff and Lead Counsel "to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicate or unproductive effort." (D.I. 41 at ¶ 10)

The strong inference is that the reason why the record was not supplemented earlier is because Mr. Kvint and his counsel and/or KBC and its counsel simply did not want to do so (or that they hoped to delay doing so for as long as possible), because disclosure of the facts could cast KBC and its counsel in a negative light. If that was in fact the reason the record was not earlier supplemented, it is surely not a satisfactory explanation. If there is some other good reason, that has not been provided to the Court.

The Court finds that this factor weighs strongly against granting leave to supplement the record.

### b.    Importance/Probative Nature of the Evidence

---

[7]    Mr. Kvint's argument that the Federal Rules of Civil Procedure do not require a lead plaintiff to provide its "reasoning for its decision not to continue in the action" in order to withdraw, (D.I. 68 at 5), is neither here nor there. For one thing, as Defendants note, whatever the Rules might require of KBC, that does not "relieve Mr. Kvint of his burden of proving up his motion for intervention[.]" (D.I. 71 at 5) Moreover, if KBC was not filing an amended complaint by the June 13, 2016 deadline because, in its capacity as Lead Plaintiff, it (along with Lead Counsel) had determined that there was an insufficient legal basis to do so, then that would have terminated this litigation. But if the reason KBC was not filing an amended complaint was that it *could not do* so—because it no longer had standing to do so—then this would provide the explanation for why, pursuant to Rule 24, KBC could not adequately represent Mr. Kvint's interests. KBC's "reasoning" for withdrawing, then, was actually crucial to the Motion.

Despite the untimely nature of the request to supplement the record, the importance of the evidence at issue is crystal clear. Indeed, it could hardly be more probative. The Court's decision on whether to consider the supplementary materials is outcome-determinative for the purposes of resolving the instant Motion.[8]

Defendants do not dispute this. Indeed, they specifically argue that without evidence that KBC sold its Chemed stock, the Court must deny Mr. Kvint's Motion. (D.I. 69 at 4 ("KBC's stock ownership (or lack thereof) was the key fact underpinning [Mr. Kvint's] Motion"); D.I. 71 at 5; Tr. at 44-45) Thus, this factor weighs strongly in favor of allowing supplementation.

### c.    Undue Prejudice to Non-movant

Defendants contend that allowing supplementation will unduly prejudice them, essentially because they have been litigating this matter for more than three years. (*See* D.I. 69 at 5; D.I. 71 at 5; *see also* Tr. at 58 ("It should not be the case that repeated error on the part of the Plaintiffs are just forgiven seriatim at the expense of the Individual Defendants.")) In support of this assertion, they rely on two cases.

First, Defendants point to *Joy Technologies, Inc. v. Flakt, Inc.*, 901 F. Supp. 180 (D. Del. 1995). In *Joy Technologies*, this Court denied a motion to reopen a damages proceeding to admit newly discovered evidence in a case that had been pending for roughly six years. *See Joy Techs.*, 901 F. Supp. at 183. There, as to the damages issues, the parties had "submitted dozens of motions, and a six day trial ha[d] already been conducted [as to] damages and royalty rates[.]"

---

[8]    And if the evidence is not considered (and the Motion denied on that basis), Defendants argue that no other prospective class member should be permitted to intervene either. (D.I. 69 at 2-3; D.I. 71 at 1-2). This would result in the extinguishment of the prospective class members' ability to seek recourse through this litigation.

*Id.* The Court ultimately determined that "a reopening of this action would further frustrate the overriding interest in prompt and efficient handling of this litigation and would prejudice the nonmoving parties." *Id.*

Defendants also cite *Chimie v. PPG Industries, Inc.*, No. Civ.A. 01-389(KAJ), 2004 WL 3393000 (D. Del. Jan. 16, 2004). There, the Court declined to consider certain supplemental submissions that the plaintiff provided after an extended discovery period had closed and just days before argument on summary judgment motions. *Chimie*, 2004 WL 3393000, at *1. The *Chimie* Court found that to consider the new materials would "clearly cause substantial and unfair prejudice to [the defendant.]" *Id.* Important to the *Chimie* Court's conclusion in this regard was the fact that the trial date was just weeks away. *Id.* Were the late submissions to be accepted, that would have necessitated a further deposition and the production of a new expert report by the defendant, all of which could not "credibl[y]" have been completed prior to the trial. *Id.*

Here, the situation is not like that in *Joy Technologies* or *Chimie*. Supplementation would not require the re-opening of a jury trial, nor would it threaten a trial date. Moreover, although the Individual Defendants have been litigating this case for a long while, and Mr. Kvint's failure to timely supplement the record did cause some further delay, the amount of delay necessary to allow for *supplementation itself* has not been great. Mr. Kvint was able to provide the necessary supplementation materials in short order after oral argument, and the parties were then able to address the relevance of those materials in brief letters submitted soon after.

Thus, this factor weighs in favor of allowing supplementation.

### d.     Conclusion

16

The importance of the proffered materials is the most compelling factor here. That, along with the fact that undue prejudice has not been established, ultimately weighs in favor of allowing Mr. Kvint to supplement the record. As such, in the interest of fairness and substantial justice, the Court will consider Mr. Kvint's supplemental declarations in assessing the Motion.

### 3. Mr. Kvint May Intervene as a Matter of Right

#### a. Mr. Kvint Has Met His Burden Under Rule 24(a)

The Court now turns to the elements of proof regarding a motion to intervene. In circumstances like these, it is not uncommon for a shareholder like Mr. Kvint to seek intervention as of right, on the grounds that the shareholder's rights are no longer protected by a named plaintiff that no longer owns the company's stock. *See, e.g.*, *In re Extreme Networks, Inc. S'holder Derivative Litig.*, 573 F. Supp. 2d 1228, 1237 (N.D. Cal. 2008); *Gaubert v. Hendricks*, 679 F. Supp. 622, 625 (N.D. Tex. 1988); *Malcolm v. Cities Serv. Co.*, 2 F.R.D. 405, 407 (D. Del. 1942). And here, the Court finds that Mr. Kvint has met his burden under Rule 24(a). Below the Court briefly sets out the reasons why Mr. Kvint has satisfied his burden of proof as to each of the four intervention of right factors.

#### (1) Mr. Kvint's application to intervene was timely

The timeliness of a motion to intervene is "'determined from all the circumstances.'" *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (quoting *NAACP v. New York*, 413 U.S. 345, 366 (1973)). The Third Circuit has listed three factors for a district court to consider regarding the timeliness of a motion to intervene: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

With regard to the stage of the proceeding, "the critical inquiry is: what proceedings of substance on the merits have occurred?" *Id.* Here, although it has been years since the case was initiated, it is still at a relatively early procedural stage; indeed, it is unclear whether it will ever proceed beyond the motion-to-dismiss phase. Intervention at such a point in the case, even if the case has been on the docket for a while, is typically permitted. *Id.* (finding that the stage of the case did not militate against intervention, although the case had been pending for four years prior to the motion to intervene, since no depositions had yet been taken, no dispositive motions had been filed, and no decrees had been entered during that period; instead, only some written discovery and settlement negotiations had taken place); *Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, Civ. No. 09-1572, 2017 WL 1376298, at *4 (W.D. Pa. Apr. 17, 2017) (finding the same, when the case had been pending for over seven years prior to the motion to intervene, but the case had been stayed for the majority of that time, and where the parties were then engaged in fact discovery, but no summary judgment motions had been filed, nor a trial scheduled).

As to prejudice that delay may cause and the reason for any delay, Defendants have not shown that Mr. Kvint engaged in relevant "delay" here. That is because the "delay" at issue here is "'the length of time an applicant waits before applying for intervention[,]'" which "'should be measured from the point at which the applicant knew, or should have known, of the risk to its rights.'" *Mountain Top Condo.*, 72 F.3d at 370 (quoting *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994)); *see also Wallach v. Eaton Corp.*, 837 F.3d 356, 375-76 (3d Cir. 2016). On this score, the record indicates that Mr. Kvint took action as soon as he knew of the applicable risk. On June 13, 2016, upon learning that KBC had lost standing to prosecute

this suit, Mr. Kvint immediately filed his letter to the Court, requesting a two-week extension to allow the submission of an amended complaint and relevant motions. (D.I. 55, *see also* D.I. 68, ex. 5 at ¶ 7) The District Court granted that request, and allowed Mr. Kvint to file his Motion by June 30, 2016. (D.I. 57) And Mr. Kvint timely did so. (D.I. 58)

For these reasons, the Court finds that Mr. Kvint's application to intervene is timely.

**(2)      Mr. Kvint has a sufficient interest in the litigation**

The next factor requires that Mr. Kvint demonstrate "an interest relating to the property or transaction that is the subject of the action[.]" Fed. R. Civ. P. 24(a)(2); *see also Mountain Top Condo.*, 72 F.3d at 366. Mr. Kvint's interest in this case "must be one that is 'significantly protectable.'" *Mountain Top Condo.*, 72 F.3d at 366 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The Third Circuit has defined a "significantly protectable" interest as "a legal interest as distinguished from interests of a general and indefinite character . . . . The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Mountain Top Condo.*, 72 F.3d at 366 (internal quotation marks and citation omitted). "Intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated." *Kleissler*, 157 F.3d at 972.

Here, there is no doubt (at least, based on the record that counsel has put before the Court) that Mr. Kvint has a legally cognizable interest relating to the property or transaction that is the subject of this action. The property at issue is Chemed stock, and the transactions at issue are those referenced in the Complaint and the PAC, in which Defendants are alleged to have made certain statements or failed to take certain action that financially harmed Chemed

19

shareholders like Mr. Kvint. (D.I. 1; D.I. 58, ex. A) In the PAC, Mr. Kvint specifically pleads that he is a current owner of Chemed stock, that he has been since 2007, and that he will hold his shares continuously throughout the pendency of this action. (D.I. 58, ex. A at ¶ 15) Additionally, Mr. Kvint submitted a declaration and exhibit confirming his Chemed stock ownership. (D.I. 68, ex. 1, ex. A) The Court finds that he has met his burden as to this element. *See Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 380 (D. Del. 1990) ("As a purchaser of Beneficial Stock during the Class Period, Caffrey is a member of the plaintiff class in this litigation. It follows that he has an interest in the subject of this litigation[.]"); *cf. Tansey v. Rogers*, Civ. No. 12-1049-RGA (Consl.), 2016 WL 3519887, at *2 (D. Del. June 27, 2016) (suggesting that a proposed intervenor shareholder-plaintiff who asserted a corporation's "right to seek redress" for harm to the corporation would have a sufficient interest in the litigation, but denying a motion to intervene on other grounds); *Bushansky v. Armacost*, Case No. 12-cv-01597-JST, 2014 WL 5335255, at *2 (N.D. Cal. Oct. 17, 2014) (finding that the proposed intervenor provided sufficient proof as to this factor, as he "claims an interest relating to the transaction at issue in this case—he owns Chevron shares and Chevron's Board of Directors' adoption of the forum-selection bylaw is the transaction challenged in the original complaint").

### (3)     Mr. Kvint's interest will be impaired or affected by the disposition of this action

The third factor requires that Mr. Kvint show only that his interest "*might* become affected or impaired, as a practical matter, by the disposition of the action in [his] absence." *Mountain Top Condo.*, 72 F.3d at 368 (emphasis in original) (citing *Alcan Aluminum*, 25 F.3d at 1185 n.15). Mr. Kvint argues that he and other Chemed shareholders "will be penalized if

substitution is not allowed, because federal courts around the country have held that collateral estoppel will bar relitigation of demand futility where one derivative suit was dismissed with prejudice, and a second shareholder plaintiff subsequently files similar claims against the same set of defendants." (D.I. 58 at 3 (citing *Henik ex rel. LaBranche & Co., Inc. v. LaBranche*, 433 F. Supp. 2d 372 (S.D.N.Y. 2006); *In re Sonus Networks, Inc. S'holder Litig.*, 422 F. Supp. 2d 281 (D. Mass. 2006); *see also* D.I. 68 at 3))

Defendants do not dispute that Mr. Kvint's legal interest will be impaired if he cannot intervene. Indeed, they argue that denial of his Motion should result in automatic dismissal of this action with prejudice, thereby extinguishing his and other shareholders' right to litigate this action (and potentially precluding any further future efforts to litigate the instant claims). (D.I. 69 at 2-3; D.I. 71 at 1-2; *see also* Tr. at 57-58) As such, the Court finds that this element of the test for a motion to intervene has been met. *Cf. Bushansky*, 2014 WL 5335255, at *2 ("[D]isposing of the case without him could impair or impede [the proposed intervenor's] interest because, in filing a separate complaint, he would run the risk of facing a statute of limitations issue.")

### (4) KBC is an inadequate representative

As to the fourth factor, regarding the adequacy of KBC's representation, Mr. Kvint's supplemental materials demonstrate that KBC lost its standing to pursue this litigation as of December 30, 2014. (*See* D.I. 68, exs. 2-4) A party that has no standing to assert claims against the Defendants, such as KBC, cannot serve as Lead Plaintiff. *See, e.g.*, *In re Cent. European Distrib. Corp. Sec. Litig.*, Civil Action No. 11-6247 (JBS-KMW), 2012 WL 5465799, at *6, *10 (D.N.J. Nov. 8, 2012); *see also Extreme Networks*, 573 F. Supp. 2d at 1237. So even if a legally

21

sufficient amended complaint could have been filed on June 13, 2016, KBC could not have been the one to file it. Thus, KBC could not have then sufficiently represented the interests of shareholders who are members of the proposed class, like Mr. Kvint. *Cf. Bushansky*, 2014 WL 5335255, at *2 ("Finally, existing parties do not already protect [the proposed intervenor's] interest, as [the former nominal plaintiff], having sold his Chevron shares, no longer has standing to prosecute this action.").

Defendants do not dispute this. Their only argument as to this element was that as of the completion of briefing on Mr. Kvint's Motion, Mr. Kvint had submitted no documentary evidence in support of the assertion that KBC had actually lost standing. (*See* Tr. at 39, 42; D.I. 69 at 4, 5 & n.5; D.I. 71 at 5) But in light of the Court's decision to allow Mr. Kvint to supplement the record, (*see* Section II.A.2, *supra*), Mr. Kvint has now remedied this defect.

### (5)    Conclusion

For the foregoing reasons, Mr. Kvint has provided sufficient proof as to all four required elements of the test for intervention of right, pursuant to Rule 24(a)(2).

### 4.    Federal Rule of Civil Procedure 23.1 Does Not Preclude Mr. Kvint's Intervention

Defendants next contend that before Mr. Kvint is allowed to intervene, the Court must determine that he and his counsel are fair and adequate representatives of the proposed class under Federal Rule of Civil Procedure 23.1. (Tr. at 44, 51-52; D.I. 69 at 3-4; D.I. 71 at 2-4) Rule 23.1 states that a derivative action, such as this one, "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ.

22

P. 23.1(a). It also includes a few additional pleading requirements that a plaintiff must fulfill. Fed. R. Civ. P. 23.1(b).

Yet although they rely on the "fairly and adequately represent" language from Rule 23.1, Defendants' argument here really seems to be that the Court must undertake a "lead plaintiff" analysis as to Mr. Kvint. That is, Defendants suggest that the Court should again utilize the same five-factor test it used earlier in the case to select KBC (over Ms. North) as the case's Lead Plaintiff at the time. (*See, e.g.*, Tr. at 52-53; D.I. 69 at 3-4; D.I. 71 at 3-4; *see also* D.I. 40 at 5-11 (the Court engaging in a five-factor analysis to determine which of competing proposed Lead Plaintiffs should be selected for that role)) The Court finds that it need not do so here.

As the Court noted in its previous Memorandum Opinion designating KBC as Lead Plaintiff, "no statutory authority exists for the appointment of a lead plaintiff in shareholder derivative actions like these[.]" (D.I. 40 at 5) Rather, courts have the inherent "authority to appoint a lead plaintiff . . . in a derivative action *in order to create an efficient case-management structure.*" *N. Miami Beach Gen. Employees Retirement Fund v. Parkinson*, No. 10 C 6514, 2011 WL 12465137, at *1 (N.D. Ill. July 5, 2011) (emphasis added). With that earlier Memorandum Opinion, the Court chose to appoint a lead plaintiff, *inter alia*, in order to "change [the] course" of the *KBC* and *North* Actions, which had been hindered by delay due to parallel proceedings occurring in multiple courts. (D.I. 40 at 5-6) The Court's goal in doing so was to create "an efficient, streamlined structure for directing this litigation[.]" (*Id.*)

At this stage, however, some of the factors that motivated the Court to appoint a lead plaintiff are no longer present. The previously divergent actions have been now been consolidated, and the litigation has been on a single "path" for over two years. And the Court is

23

not currently faced with competing shareholders seeking lead plaintiff status who disagree with each other as to the future course of the litigation. (D.I. 68 at 4 (Mr. Kvint asserting that "[w]hen there is only one shareholder derivative plaintiff, there is no need for appointment of a lead plaintiff."))

In similar circumstances, other courts have allowed such actions to proceed, either without designating a lead plaintiff or without conducting the type of analysis suggested by Defendants. *See, e.g.*, *In re OSI Sys., Inc. Derivative Litig.*, C.A. No. 14-cv-02910, D.I. 24 (C.D. Cal. May 29, 2014), (D.I. 68, ex. 2 at ex. A) ("*OSI Systems*"); *cf. Martin v. Atchison Casting Corp.*, 200 F.R.D. 453, 457 & n.1 (D. Kan. 2001). The lead plaintiff designation serves to promote efficiency, and Defendants have made no argument as to how conducting an extensive analysis to assess Mr. Kvint's ability to litigate, when the Rule 24(a) requirements have already been met, will enhance efficiency in this case.[9]

---

[9] Defendants point to *In re Extreme Networks, Inc. Shareholder Derivative Litigation*, 573 F. Supp. 2d 1228 (N.D. Cal. 2008), for the proposition that an intervening plaintiff should be required to "file new motions to appoint lead plaintiff and lead counsel, even though none of the other plaintiffs (or potential plaintiffs) sought to be appointed lead plaintiff at that time." (D.I. 71 at 3 (citing *Extreme Networks*, 573 F. Supp. 2d at 1237)) In that derivative suit, the United States District Court for the Northern District of California had appointed a lead plaintiff ("Grucel") near the time of the filing of the original complaint; in a later amended complaint, Grucel informed the Court that he was no longer able to serve in the lead plaintiff role, and indicated that another person ("Wheatley") sought to intervene and become the lead plaintiff. *Extreme Networks*, 573 F. Supp. 2d at 1237. And the *Extreme Networks* Court did indeed require Wheatley to file "new motions to appoint lead plaintiff and lead counsel," and stated that it needed to "carefully consider who would best represent the interests of [the plaintiff class and the corporation]." *Id.*

Yet there are meaningful differences between that case and this one. In *Extreme Networks*, it is clear the district court was concerned that Wheatley, the proposed intervenor, had not yet filed her own motion seeking to intervene. Instead, all the Court had before it at the time of its order was an amended complaint that had been filed by Grucel, in which (in a footnote) Grucel had noted that Wheatley "seeks to intervene as lead plaintiff." *Extreme Networks*, 573 F.

24

In summary, Mr. Kvint: (1) is the only Chemed shareholder who currently seeks to serve as plaintiff in this litigation; (2) has filed a successful motion to intervene as of right under Rule 24(a); and (3) has filed a proposed amended complaint that pleads facts indicating why he satisfies Rule 23.1's requirements, and why he is in the best position to prosecute the action (facts that have not been challenged). In light of this, the Court concludes that he may properly maintain the instant derivative action as a named plaintiff, and there is no need to engage in a "lead plaintiff analysis" before coming to that conclusion.[10]

## B.      Motion for Leave to Amend

### 1.      Legal Standard

Having determined that it will allow Mr. Kvint to intervene, the Court still must decide

---

Supp. 2d at 1237; *see also id.* at 1236. It stands to reason that one factor motivating the *Extreme Networks* Court's order was a desire to have the proposed intervenor *actually file a motion affirmatively indicating her desire to serve* as a named plaintiff in the case. In contrast, here, Mr. Kvint *has* filed his own motion to intervene and has filed the PAC, which "is materially different from the original complaint filed by KBC." (D.I. 58 at 2, *see also id.*, exs. A-B) Moreover, he has asserted that he is "in the best position to vigorously litigate this case and effectively represent Chemed and its shareholders[,]" based on his "belief that he is the only Chemed shareholder that exercised their [8 Del. C. §] 220 rights to inspect Chemed's books and records." (D.I. 58 at 5; *see also id.*, ex. A at 1) And while Defendants are correct that Mr. Kvint did not originally disclose the number of shares of Chemed stock that he holds, (D.I. 69 at 4), he did allege that he is a Chemed shareholder, (D.I. 58, ex. A at ¶ 15), and has since provided supplemental materials demonstrating that he holds 50 shares of Chemed stock, (D.I. 68, ex. 1 at ex. A).

[10]      Defendants state that "[i]n the event that the Court permits Mr. Kvint to intervene, and to file a new amended complaint, Defendants reserve the right to file a motion for costs related to certain aspects of the prior briefing in this case." (D.I. 71 at 6 n.6) In light of the unfortunate circumstances surrounding Mr. Kvint's delay in supplementing the record (set out above), the Court will entertain such a motion from Defendants if filed. The Court will not take further action at this time as suggested by Defendants, (D.I. 71 at 4), to re-visit whether Motley Rice should be disqualified from continuing to represent Mr. Kvint. Mr. Kvint may choose his own counsel in the matter.

whether to grant his Motion as it pertains to the amendment of claims. (*See* D.I. 58, ex. A)

Federal Rule of Civil Procedure 15(a) provides that, other than in certain circumstances where a party may amend a pleading as a matter of course, a party may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule further explains that a court should "freely give leave [to amend the pleadings] when justice so requires." *Id.*

In line with the requirements of Rule 15(a), the Third Circuit has adopted a liberal approach in allowing amendments, in order to ensure that "claim[s] will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990); *see also Paoli v. Stetser*, Civil Action No. 12-66-GMS-CJB, 2013 WL 2154393, at *3 (D. Del. May 16, 2013). The "factors [that a court should] consider in weighing a motion for leave to amend are well-settled: (1) whether the amendment has been unduly delayed; (2) whether the amendment would unfairly prejudice the non-moving party; (3) whether the amendment is brought for some improper purpose; and (4) whether the amendment is futile." *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, Civ. No. 11-54-SLR, 2012 WL 2365905, at *2 (D. Del. June 21, 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

In opposing the Motion, however, Defendants make an argument particular to the circumstances of this case: that the PAC exceeds the limited amendment allowed by Chief Judge Stark's May 12, 2016 Order. (D.I. 60 at 9; Tr. at 56; D.I. 69 at 3 n.2; D.I. 71 at 2 n.2; *see also* D.I. 53 at ¶ 4) The Court agrees, and finds that partial denial of leave to amend is appropriate on this ground.

When a court grants a party leave to amend for a specific purpose, and that party files a

26

proposed amended complaint that exceeds the bounds of what was permitted, courts routinely dismiss the excess counts or claims. *See, e.g.*, *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 524 (3d Cir. 2007) (affirming a district court's decision to dismiss an amended count of a complaint for which plaintiff had not been granted leave to amend); *Gerard v. Wells Fargo Bank, N.A.*, CASE NO. CV 14-03935 MMM (SHx), 2015 WL 12791416, at *12 (C.D. Cal. Jan. 22, 2015) (finding that because the plaintiff "was given leave to amend only to cure deficiencies in the claims she had originally pled, she has exceeded the scope of leave to amend granted [and so] [t]he court therefore dismisses these [new] allegations[.]"); *Raiser v. City of Los Angeles*, No. CV 13-2925 RGK (RZ), 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014) ("When a district court grants leave to amend for a specified purpose, it does not thereafter abuse its discretion by dismissing any portions of the amended complaint that were not permitted."). Such partial dismissals are appropriate "even if the court did not expressly bar amendments other than the one(s) it *did* allow." *Raiser*, 2014 WL 794786, at *4 (emphasis in original); *see also FDIC v. Kooyomijan*, 220 F.3d 10, 15 (1st Cir. 2000). Here, in granting Defendants' motion to dismiss KBC's Complaint, the District Court specifically allowed KBC to file only "an amended complaint *that addresses the deficiencies of its duty of loyalty claim*[.]" (D.I. 53 at ¶ 4 (emphasis added)) As Defendants state, the PAC "does much more than that: it adds two *entirely new claims to the litigation*[.]" (D.I. 60 at 9 (emphasis added) (citing D.I. 58, ex. A at ¶¶ 226-33)) Additionally, as Defendants note, those two new claims (Counts I and II of the PAC) are ones that "Lead Plaintiff KBC, after more than two-and-a-half years of litigation and multiple opportunities to amend its pleading, never chose to pursue." (D.I. 60 at 9)

The District Court's May 12, 2016 Order was clear in what it permitted and what it did

not. Mr. Kvint's addition of proposed Counts I and II exceeds the scope of that order. While the Court has found that Mr. Kvint may intervene, it agrees with Defendants that he "should not be allowed to nullify several years of litigation and the Court's May 12[, 2016] Order" in doing so. (*Id.* at 10)[11] Because the new claims would substantially expand the scope of this lawsuit, and because they are inconsistent with the limited leave to amend granted by the District Court, the Court recommends that Mr. Kvint's Motion be denied to the extent it seeks leave to amend to add proposed Counts I and II of the PAC.

## III.  CONCLUSION

For the reasons set out above, the Court recommends that Mr. Kvint's Motion be GRANTED-IN-PART and DENIED-IN-PART. Specifically, it recommends that Mr. Kvint's Motion be GRANTED to the extent he seeks to intervene as of right, and that it be GRANTED to the extent it seeks leave to amend via the PAC to assert a duty of loyalty claim and corresponding factual allegations (Count III). However, the Court recommends that the Motion be DENIED to the extent that it seeks leave to amend via the PAC to add two new claims to the litigation (Counts I and II) and factual allegations relating only to those claims.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

---

[11]     Mr. Kvint points to an opinion from the Court of Chancery of Delaware, *TVI Corp. v. Gallagher*, C.A. No. 7798-VCP, 2013 WL 5809271 (Del. Ch. Oct. 28, 2013) in support. (D.I. 68 at 2)  *TVI Corp.* is a case where the Court permitted shareholder plaintiffs to amend their pleading to add a new fraud claim (and a section containing facts relevant to that claim) after briefing and oral argument on the defendants' motion to dismiss had already been completed. 2013 WL 5809271, at *20-23. But *TVI Corp.* is easily distinguished. There, the plaintiffs sought to amend their complaint *before* the court ruled on the defendants' motion to dismiss. Here, the District Court has already adjudicated one motion to dismiss, and specifically granted leave to amend only as to *one specific claim*.

28

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain privileged and/or confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version of the Report and Recommendation. Any such redacted version shall be submitted no later than **May 2, 2017** for review by the Court, along with a submission demonstrating why there is good cause for the redactions and why disclosure of the redacted material would "work a clearly defined and serious injury to the party seeking" redaction. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: April 25, 2017

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE